**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br> U.S. Department of Justice <br> Environment & Natural <br> Resources Division <br> 10th & Pennsylvania Ave., N.W. <br> Washington, D.C. 20530 <br><br> Plaintiff, <br> v. <br><br> MTU AMERICA INC., <br> 39525 Mackenzie Drive <br> Novi, Michigan  48377 <br><br> Defendant. | Civil Action No.  1:15-cv-429 |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought pursuant to Sections 203, 204, 205, and 213 of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7522, 7523, 7524, & 7547, to obtain injunctive relief and the assessment of civil penalties against MTU America, Inc. ("MTU"), formerly known as Tognum America, Inc., and prior to that MTU Detroit Diesel, Inc., for violations of the Act and regulations promulgated thereunder.

2. Section 203(a)(1) of the Act, 42. U.S.C. § 7522(a)(1), prohibits the distribution in commerce, sale, the offering for sale, or the introduction, or delivery for introduction, into

commerce, of any new motor vehicle or new motor vehicle engine, unless such vehicle or engine is covered by a certificate of conformity ("COC").

3. Section 213(d) of the Act, 42 U.S.C. § 7547(d), provides that any nonroad engine regulations promulgated by EPA shall be enforced in the same manner as the highway vehicle standards promulgated under section 202 of the Act, 42 U.S.C. § 7521. Thus, the highway vehicle and nonroad engine standards are enforced via, *inter alia*, Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1).

4. The violations cited herein against MTU arise from the distribution in commerce, sale, offering for sale, or the introduction, or delivery for introduction, into commerce, of approximately 895 nonroad and marine compression-ignition ("CI") engines (hereinafter the "Subject Engines") with COCs that have been voided *ab initio*, in violation of Sections 203 and 213 of the Act, 42 U.S.C. §§ 7522 & 7547, and regulations promulgated in 40 C.F.R. Parts 89 (Nonroad CI Engines) and 94 (Marine CI Engines).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action, pursuant to Sections 204, 205, and 213 of the Act, 42 U.S.C. §§ 7523, 7524, & 7547, and 28 U.S.C. §§ 1331, 1345, and 1355.

6. Venue is proper in this jurisdiction pursuant to Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 & 7524, because the Administrator of EPA has her principal place of business here.

## DEFENDANT

7. MTU is incorporated under the laws of the State of Delaware and does business in the United States and the District of Columbia. MTU is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e). MTU is also a "manufacturer" within the

meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1), which defines the term "manufacturer" to include, *inter alia*, any person engaged in the manufacturing or assembling of new nonroad engines.

8. On or about June 1, 2011, MTU Detroit Diesel, Inc. changed its name to Tognum America Inc.  On or about January 9, 2014, Tognum America Inc. changed its name to MTU America, Inc.

9. At all times relevant to this action, Defendant was engaged in, among other things, the business of manufacturing and selling nonroad and marine CI engines in the United States.

## STATUTORY AND REGULATORY BACKGROUND

10. This action arises under Title II of the Act, as amended, 42 U.S.C. § 7521 *et seq*., and the regulations promulgated thereunder that are aimed at reducing emissions from mobile sources of air pollution, including, *inter alia*, nonroad engines.

11. Section 216(10) of the Act, 42 U.S.C. § 7550(10), defines the term "nonroad engine" as an internal combustion engine that is not used in a motor vehicle as defined in Section 216(2) of the Act, 42 U.S.C. § 7550(2).

12. Section 213(a)(1) and (a)(2) of the Act, 42 U.S.C. § 7547(a)(1) & (a)(2), requires EPA to conduct a study of emissions from nonroad engines and vehicles, and to determine whether emissions of certain pollutants from nonroad engines and vehicles are significant contributors to ozone or carbon monoxide ("CO") in more than one area which has failed to attain the National Ambient Air Quality Standards for these pollutants.

13. Section 213(a)(3) and (a)(4) of the Act, 42 U.S.C. § 7547(a)(3) & (a)(4), required EPA to promulgate regulations to reduce emissions from those categories or classes of nonroad

engines and vehicles that cause or contribute to ozone or CO air pollution if nonroad emissions are determined to be significant, and authorized EPA to regulate other emissions from nonroad engines or vehicles if EPA determines that they contribute to other forms of air pollution which may reasonably be anticipated to endanger public health or welfare.

14. On June 17, 1994, EPA made an affirmative determination that nonroad engines are significant contributors to ambient ozone or CO levels in more than one non-attainment area, and that emissions from these engines cause or contribute to air pollution that "may reasonably be anticipated to endanger public health or welfare." *See* 59 Fed. Reg. 31306, 31307 (June 17, 1994).

15. On March 30, 1998, EPA promulgated more stringent Tier 3 emissions standards for large nonroad engines, including engines above 560kW, which became effective beginning with certain engines certified in Model Year 2006 to 2010. *See* 64 Fed. Reg. 15208 (Mar. 30, 1999); 65 Fed. Reg. 24268 (April 25, 2000); 40 C.F.R. Part 89. On June 29, 2004, EPA promulgated comprehensive Tier 4 emission standards that became effective in Model Year 2011 for engines above 560kW. *See* 69 Fed. Reg. 38958 (June 29, 2004); 40 C.F.R. Part 1039.

16. EPA's Nonroad CI Regulations are codified at 40 C.F.R. Part 89, while the Marine CI Regulations are codified at 40 C.F.R. Part 94. The Regulations set emissions standards, certification requirements, and implementation requirements in order to ensure that nonroad CI and marine CI engines maintain their level of emission performance as they age. These regulations are applicable to the Subject Engines.

17. Section 204(a) and (b) of the Act, 42 U.S.C. § 7523(a) & (b), provide district courts of the United States with jurisdiction to restrain violations of Section 203(a).

18. Section 205(a) of the Act, 42 U.S.C. § 7524(a), authorizes EPA to commence a civil action to assess and recover civil penalties against any person that violates Section 203(a) of the Act.

19. Section 205(a) of the Act, 42 U.S.C. § 7524(a), specifies that any violation of Section 203(a)(1) shall be subject to a civil penalty of up to $25,000 per day of violation or per violation per engine, as applicable.

20. The Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, codified at 40 C.F.R. Part 19, increased these statutory maximum penalties under the Act to up to $32,500 per day of violation or per violation per engine, as applicable, for each violation that occurred after March 15, 2004.  73 Fed. Reg. 75340-346 (Dec. 11, 2008).

### A. Testing Requirements and Certificates of Conformity

21. Under Sections 203(a)(1) and 213(d) of the Act, 42 U.S.C. §§ 7522(a)(1) & 7547(d), and 40 C.F.R. §§ 89.1003(a)(1)(i) & 94.1103(a)(1)(i), a manufacturer is prohibited from selling, or offering for sale, or introducing, or delivering for introduction, into commerce any Nonroad CI Engine or Marine CI Engine unless it is covered by a COC issued by EPA.  A COC certifies that the engine and all subsequently produced engines in the applicable engine family comply with all applicable standards and requirements.  40 C.F.R. §§ 89.115 and 94.203.

22. To obtain a COC for a Nonroad CI Engine or Marine CI Engine, a manufacturer must submit an application to EPA for each Model Year and for each engine family that it intends to manufacture or sell in the United States. 42 U.S.C. § 7525(a)(1); 40 C.F.R. §§ 89.115 & 94.203.

23. For each engine family, a manufacturer is required to select a test engine that is configured to represent the in-use operation of actual production engines. 40 C.F.R. §§ 89.1003(a)(2)(iii), 89.119(a)(2), 89.118(b) & 94.217(b).

24. The manufacturer is required to maintain a detailed description and history of the test engine. 42 U.S.C. § 7542; 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).

25. The manufacturer is required to gain EPA's approval for non-routine engine maintenance during emissions testing. 40 C.F.R. §§ 89.118(b) & 94.220(c).

26. The Administrator may retroactively deem such COC, as it applies to the original engine and to the "carryover" engines, void *ab initio*, if the manufacturer commits any of the infractions listed in 40 C.F.R. §§ 89.126(c) & 94.208(c)(4), including knowingly submitting false or incomplete information, rendering test results inaccurate, or otherwise committing any fraudulent act which results in the issuance of a COC.

27. The Administrator may void a COC *ab initio* for an engine family for which the manufacturer fails to retain the records relating to emissions testing as required pursuant to 40 C.F.R. §§ 89.210(g) & 94.215(a)(6).

## GENERAL ALLEGATIONS

28. At all times pertinent to this action, MTU was a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1), an "engine manufacturer" within the meaning of 40 C.F.R. §§ 89.2, and "manufacturer" within the meaning of 40 C.F.R.§ 94.2, and thus was subject to the prohibitions set forth in Sections 203 and 213 of the Act, 42 U.S.C. §§ 7522 & 7547, and the prohibitions and requirements in 40 C.F.R. Parts 89 and 94.

29. For Model Years 2007, 2008, and 2009, MTU manufactured a Series 4000 engine that was subject to the Tier 2 regulations described above. MTU's Tier 2 Series 4000 engine has a useful life of 8,000 hours.

30. During 2006 and 2007, MTU made multiple unsuccessful attempts to complete its emissions test. In late June 2007, MTU began its seventh attempt to complete emissions testing (hereinafter the "Seventh Emissions Test"). The Seventh Emissions Test was to last 2,000 hours.

31. At approximately hour 570, MTU conducted maintenance on fuel injectors A2 and A4. MTU did not notify and gain EPA's approval of this maintenance as required by 40 C.F.R. §§ 89.118(b) & 94.220(c), and did not record this maintenance in its engine logbook as required by 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).

32. At approximately 618 hours, MTU conducted maintenance of fuel injector A3. MTU did not gain EPA's approval of this maintenance as required by 40 C.F.R. §§ 89.118(b) & 94.220(c), and did not record this maintenance in its engine logbook as required by 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).

33. At approximately 622 hours, MTU replaced the high pressure fuel pump. MTU did not gain EPA's approval of this maintenance as required by 40 C.F.R. §§ 89.118(b) & 94.220(c), and did not record this maintenance in its engine logbook as required by 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).

34. At approximately 632 hours, MTU removed and cleaned fuel injectors B1 and B4 to eliminate contamination caused by the failure of the high pressure fuel pump. While it cleaned the fuel injectors, MTU installed new fuel injectors. MTU tested the engine for an additional 70 hours using the new fuel injectors. MTU then re-installed the original B1 and B4 fuel injectors. MTU did not gain EPA's approval of this maintenance as required by 40 C.F.R.

§§ 89.118(b) & 94.220(c), and did not record this maintenance in its engine logbook as required by 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).

35. At approximately 5,510 hours, MTU conducted maintenance of fuel injectors A3 and A6. MTU did not gain EPA's approval of this maintenance as required by 40 C.F.R. §§ 89.118(b) & 94.220(c), and did not record this maintenance in its engine logbook as required by 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).

36. At approximately 1,809 hours, MTU conducted maintenance on fuel injector A3, including replacement of the flow mass limiting valve. During this maintenance period, MTU removed fuel injectors A3 and A6. MTU replaced the flow mass limiting valve on fuel injectors A3 and A6. At hour 1,809, MTU conducted maintenance on fuel injectors A2 and A4. MTU did not gain EPA's approval of this maintenance as required by 40 C.F.R. §§ 89.118(b) & 94.220(c), and did not record this maintenance in its engine logbook as required by 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).

37. At approximately 1,810 hours, MTU conducted maintenance of fuel injectors A3 and A6. MTU did not gain EPA's approval of this maintenance as required by 40 C.F.R. §§ 89.118(b) & 94.220(c), and did not record this maintenance in its engine logbook as required by 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).

38. At approximately hours 1,900 to 2,000, MTU fabricated and inserted a metal device that contained an oxidation catalyst into the exhaust sampling line between the engine and the emissions analyzer. Prior to installing the device on the test engine, MTU had tested the device and determined that it would result in a reduction of hydrocarbon emissions.

39. At approximately hours 1,900 to 2,000, MTU manipulated atmospheric factors to alter the hydrocarbon emissions data.

40. At approximately 2,000 hours, MTU conducted emissions test with the metal device installed in the emissions measurement line.

41. MTU engineers destroyed the metal device after the test was completed.

**Certificate of Conformity Applications**

42. On or about October 9, 2007, MTU submitted an application for a COC for nonroad CI Engine Family 8MDDL95.4XTR for Model Year 2008 based upon the results obtained during the Seventh Emissions Test. MTU's application for a COC failed to mention the activities alleged in paragraphs 31 to 41. On or about December 3, 2007, EPA issued MTU a COC for Engine Family 8MDDL95.4XTR for Model Year 2008.

43. On or about November 6, 2007, MTU submitted an application for a COC for nonroad CI Engine Family 8MDDM65.0MTR for Model Year 2008 based upon the results obtained during the Seventh Emissions Test. MTU's application for a COC failed to mention the activities alleged in paragraphs 31 to 41. On or about November 14, 2007, EPA issued MTU a COC for Engine Family 8MDDM65.0MTR for Model Year 2008.

44. On or about May 13, 2008, MTU submitted an application for a COC for marine CI Engine Family 9MDDN86.2MTR for Model Year 2009 based upon the results obtained during the Seventh Emissions Test. MTU's application for a COC failed to mention the activities alleged in paragraphs 31 to 41. On or about April 8, 2008, EPA issued MTU a COC for Engine Family 9MDDN86.2MTR for Model Year 2009.

45. On or about September 27, 2008, MTU submitted an application for a COC for Marine CI Engine Family 9MDDN65.0MTR for Model Year 2009 based upon the results obtained during the Seventh Emissions Test. MTU's application for a COC failed to mention the

activities alleged in paragraphs 31 to 41.  On or about October 9, 2008, EPA issued MTU a COC for Engine Family 9MDDN65.0MTR for Model Year 2009.

46. On or about September 27, 2008, MTU submitted an application for a COC for Marine CI Engine Family 9MDDN95.4XTR for Model Year 2009 based upon the results obtained during the Seventh Emissions Test.  MTU's application for a COC failed to mention the activities alleged in paragraphs 31 to 41 in violation of 40 C.F.R. §§ 89.124(a)(2) & 94.215(a)(2).  On or about November 19, 2008, EPA issued MTU a COC for Engine Family 9MDDN95.4XTR for Model Year 2009.

47. MTU's applications for the identified COCs and the Subject Engines failed to conform to the requirements at 40 C.F.R. §§ 89.115(d), 89.119(a)(2),  94.203(d), & 94.217(b) because the applications contained incomplete and/or inaccurate information and the test engine was not representative of production engines.

48. On February 23, 2015, EPA, pursuant to its authority under 40 C.F.R. §§ 89.126(c), 89.210(g), 94.208(c)(4), & 94.215(a)(6), voided *ab initio* MTU's COCs for model-year 2008 and 2009 engine families designated 8MDDL95.4XTR, 8MDDM65.0MTR, 9MDDL95.4XTR, 9MDDN65.0MTR, and 9MDDN86.2MTR.

49. MTU sold and/or introduced into commerce the Subject Engines in the United States.

## **CLAIM FOR RELIEF**
### SELLING OR OTHERWISE INTRODUCING INTO COMMERCE
### NONROAD AND MARINE ENGINES NOT COVERED BY A VALID CERTIFICATE OF CONFORMITY

50. Paragraphs 1 through 49 are realleged and incorporated herein by reference.

51. Because the COCs issued as a result of the Seventh Emissions Test have been voided *ab initio*, MTU violated Sections 203(a)(1) and 213(d) of the Act, 42 U.S.C.

§§ 7522(a)(1) & 7547(d), and 40 C.F.R. §§ 89.1003(a)(1)(i) and 94.1103(a)(1), by offering for sale, selling, or otherwise introducing into commerce, or causing the offering for sale, the sale, or the introduction into commerce of, the Subject Engines, which were not covered by those COCs.

52. Pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), and 40 C.F.R. §§ 89.1006(a)(3) & 94.1106(a)(3), any violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 94.1106(a)(3) constitutes a separate offense with respect to each Subject Engine.

53. Pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), and 40 C.F.R. §§ 89.1006(a)(1) & 94.1106(a)(1), and adjusted as set forth in 31 U.S.C. § 3701 and 40 C.F.R. Part 19, MTU is liable for civil penalties of up to $32,500 for each violation identified above.

54. Unless restrained by an order of this Court, these violations may continue. Pursuant to Section 204(a) of the Act, 42 U.S.C. § 7523(a), MTU is liable for injunctive relief for the violations identified above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States, respectfully prays that this Court provide the following relief:

1. A permanent injunction restraining any further violations and directing MTU to take steps necessary to come into permanent and consistent compliance with Sections 203, 208, and 213 of the Act, 42 U.S.C. §§ 7522, 7542, & 7547, along with the nonroad and marine CI regulations set forth at 40 C.F.R. Parts 89 and 94 and other applicable regulations;

2. A judgment assessing civil penalties against MTU and in favor of the United States, not to exceed $32,500 for each violation per engine;

3. Award the United States its costs and disbursements in this action; and

   4.  Grant such other relief as this Court deems appropriate.

         Respectfully submitted,

         _s/John C. Cruden_____
         JOHN C. CRUDEN
         Assistant Attorney General
         Environment and Natural Resources Division
         United States Department of Justice

         _s/Kristin M. Furrie_____
         KRISTIN M. FURRIE
         Trial Attorney
         Environmental Enforcement Section
         Environment and Natural Resources Division
         U.S. Department of Justice
         P.O. Box 7611
         Washington, D.C.  20044-7611
         (202) 616-6515
         kristin.furrie@usdoj.gov

OF COUNSEL:

CHRISTOPHER A. THOMPSON
Chief – Western Field Office
Air Enforcement Division
United States Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202