UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 15-cv-429 (TSC) |
| MTU AMERICA INC., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Before the court is the United States' unopposed motion to enter a consent decree. Having reviewed the complaint, proposed consent decree, and the motion, the court finds that the agreement is fair, adequate, reasonable, appropriate, and serves the public interest. Therefore, the motion is granted and the court will enter the consent decree.

**I.     BACKGROUND**

This case arises from alleged violations of the Clean Air Act ("CAA") by defendant MTU America, Inc. ("MTU"). The United States, on behalf of the United States Environmental Protection Agency ("EPA"), seeks monetary penalties and injunctive relief against MTU for allegedly falsifying emissions tests and unlawfully selling 895 non-road and marine compression-ignition engines (the "Subject Engines").

The alleged violations occurred as a result of actions taken by MTU while it was completing an emissions test necessary to acquire Certificates of Conformity for the Subject Engines. Certificates of Conformity are required for non-road and marine compression-ignition engines pursuant to the CAA and include various standards and requirements related to

1

emissions.  The EPA Administrator may retroactively deem a Certificate of Conformity, as it applies to an original engine and any "carryover" engines, *void ab initio*, if the manufacturer commits certain enumerated infractions, including knowingly submitting false or incomplete information, rendering test results inaccurate, otherwise committing any fraudulent act which results in the issuance of a Certificate of Conformity, or failing to retain records relating to emissions testing.  In this case, MTU had failed to certify its Series 4000 engine as a result of numerous failed emissions tests in 2006 and 2007.  During its seventh test, in June 2007, MTU allegedly engaged in a series of actions intended to cheat the test, including conducting maintenance, replacing the high pressure fuel pump, removing and replacing fuel injectors, fabricating and inserting a catalytic convertor-like device (which it later destroyed), and manipulating atmospheric factors to alter emissions data.  MTU neither sought EPA approval to take any of these actions nor recorded them in its engine logbook, as required by EPA regulations.  MTU then applied for and received Certificates of Conformity based on the falsified emissions test.  After EPA became aware of the testing irregularities, it voided MTU's Certificates of Conformity.  MTU had already sold 895 Subject Engines based on the voided Certificates of Conformity.

On March 24, 2015, the United States simultaneously filed a complaint and a notice of lodging of the proposed consent decree, asking the court to defer action until the government completed the necessary notice-and-comment procedures.  The government received no public comments, and now moves the court to enter the proposed decree.  The decree sets out the stipulated penalties, compliance and reporting requirements, and other provisions governing the responsibilities of the parties going forward.

## II.     LEGAL STANDARD

"Approval of a settlement is a judicial act that is committed to the informed discretion of the trial court." *United States v. District of Columbia,* 933 F. Supp. 42, 47 (D.D.C. 1996) (citation omitted). A court reviewing a consent decree must "determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (citation omitted); *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 70 (D.D.C. 2004); *see also Massachusetts v. Microsoft*, 373 F.3d 1199, 1206 n.1 (D.C. Cir. 2004) (noting the general requirement that a consent decree must "fairly and reasonably resolve the controversy in a manner consistent with the public interest") (internal quotations and citation omitted). Settlement is highly favored, as "[n]ot only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation." *Gorsuch*, 718 F.2d at 1126. This is particularly true in cases involving the EPA, where courts accord "broad deference . . . to EPA's expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement." *District of Columbia,* 933 F. Supp. at 47 (citations omitted).

The CAA requires EPA to provide "a reasonable opportunity by notice in the Federal Register to persons who are not named as parties or intervenors to the action" to submit comments on the decree before it is entered. 42 U.S.C. § 7413(g).

## III.     ANALYSIS

   a. <u>Fairness</u>

Courts must consider both procedural and substantive fairness in their analysis of proposed consent decrees. *District of Columbia,* 933 F. Supp. at 48. "A review of the fairness of

3

a proposed consent decree requires an assessment of the good faith of the parties, the opinions of the counsel, and the possible risks involved in litigation if the settlement is not approved. A consent decree is substantively fair if it incorporates concepts of corrective justice and accountability[.]" *Envtl. Def.*, 329 F. Supp. 2d at 70 (internal quotations and citations omitted).

The consent decree proposed in this litigation is fair. The United States and MTU support entry of the decree. (Mot. 1). There is no suggestion of impropriety in the negotiation of the agreement, and all the parties were represented and advised by competent technical and legal staff. (Mot. 5). The parties have reached an agreement that remedies the alleged violations and holds MTU accountable for emissions testing going forward. In addition, the United States complied with the notice-and-comment procedures required by the CAA and received no comments.

      b. <u>Adequacy, Reasonableness, and Appropriateness</u>

When assessing whether the consent decree is adequate, reasonable, and appropriate, courts "focus on the extent to which the decree is confined to the dispute between the parties and whether the decree adequately accomplishes its purported goal." *Envtl. Def.,* 329 F. Supp. 2d at 71. This does not mean a court may "impose its own judgments . . . [but] [r]ather, the court must determine whether the proposed consent decree is reasonable from an objective point of view." *Id.* (internal quotations and citation omitted).

The parties agree that the scope and purpose of the consent decree is to end this civil action and address "alleged Clean Air Act violations based on Defendant's sale of approximately 895 engines without valid Certificates of Conformity." (Mot. 1). The penalties include a $1.2 million fine and injunctive relief which requires MTU to conduct annual audits for three years to

assess its compliance with Title II CAA requirements and remedy any non-compliance that is identified.  (Mot. 5).

The fine is both adequate and appropriate given the underlying conduct of MTU and as a deterrent to future CAA violations.[1]  The injunctive relief is also reasonable and appropriate as it ensures that MTU will take steps to prevent future violations and address any institutional problems that cannot be addressed by a monetary penalty alone.  In light of these factors, the Court finds that the consent decree adequately, reasonably, and appropriately addresses the conduct of MTU and promotes the purposes of the CAA.

   c.  <u>Public Interest</u>

The consent decree furthers the public interest by protecting the reliability of non-road and marine combustion-ignition engine emissions testing.  The decree also furthers the goals of the CAA by taking steps to ensure cleaner air for the public.  EPA did not receive any public comments, however the court is satisfied that the public interest is served by penalizing those who attempt to circumvent EPA's testing protocols to the detriment of the general public.

## IV.  CONCLUSION

For the foregoing reasons, the court finds that the consent decree is fair, adequate, reasonable, appropriate, and in the public interest.  The motion to enter the consent decree is therefore GRANTED.  An appropriate Order accompanies this Memorandum Opinion.

Date:  May 22, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[1] In assessing the penalties imposed, the Court gave due consideration to the factors identified in 42 U.S.C. § 7524(b).